IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ALICE M. W.,

                    Plaintiff,

          v.                                    Civil Action No.
                                                6:20-CV-1122 (DEP)


COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP                     CHRISTOPHER T. MILLIMAN, ESQ.
250 South Clinton Street, Suite 210   HOWARD D. OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                CANDACE LAWRENCE, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


DECISION AND ORDER[1]

_____

[1]       This matter is before me based upon consent of the parties, pursuant to 28
U.S.C. § 636(c).

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, is ineligible for the disability insurance ("DIB") and supplemental security income ("SSI") benefits for which she has applied. For the reasons set forth below, I conclude that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in December of 1982, and is currently thirty-nine years of age. She was thirty-three years old on her alleged onset date of December 8, 2016, and thirty-four years old at the time of her application for benefits in July of 2017. Plaintiff stands five-feet and seven inches in height, and weighed between approximately one hundred and sixty-one and one hundred and seventy-eight pounds during the relevant time period. Plaintiff currently lives in a mobile home in Vernon Center, New York with her physically disabled husband and one minor child.

In terms of education, plaintiff attended high school up to the tenth grade, and while in school was placed in special education for all her classes due to learning difficulties. She last worked as a dishwasher and

2

cleaner at a restaurant.

Plaintiff alleges that she suffers from pain and arthralgias in her right ankle and the joints of her right foot, a lesion on her ulnar nerve, neck pain, back pain, two crushed vertebrae in her neck, asthma, and a developmental disorder.  She has treated for her various physical impairments with medication, physical therapy, and surgeries, including a discectomy and fusion in her cervical spine in 2015, left carpal and cubital tunnel release in 2016, surgery on her right wrist also in 2016, and surgical removal of a cyst on her right ankle in 2017.  Plaintiff received treatment for her impairments during the relevant period with various sources at Oneida Healthcare including Dr. Patrick Caulfield, as well as at Upstate University Orthopedics and Neurosurgery.

Plaintiff has reported that she is limited by her physical impairments. She has a driver's license and can drive, but her back hurts if she drives too far, and she also has difficulty turning her head due to her neck impairment.  Plaintiff is no longer treating for her neck because her physicians are more focused on her back now, although she continues to have pain in her shoulders when reaching forward and her hand goes "dead" if she reaches overhead.  She has back pain that migrates down her left leg.  She is able to sit or stand for a few minutes before needing to

change positions, she has difficulty walking for any significant time, and has difficulty bending because she cannot get back up without help.  Plaintiff has reported that she can lift only a maximum of ten pounds and cannot feel things when they are in her hands.  Her whole family helps with the chores around the house, and they tend to just stay home most of the time. Plaintiff does go to her child's activities, but she cannot sit through her child's chorus concerts because of her back pain.  She takes pain medications and does not experience any side effects from them.

II.    PROCEDURAL HISTORY

    A.    Proceedings Before the Agency

Plaintiff applied for DIB and SSI payments under Title II and Title XVI of the Social Security Act, respectively, on July 19, 2017.  In support of those applications, she alleged a disability onset date of December 8, 2016,[2] and claimed to be disabled based on pain and arthralgias in her right ankle and foot, lesions on her ulnar nerve/hand numbness and pain, neck pain, back pain, asthma, and a developmental disorder.

A hearing was conducted on April 4, 2019, by ALJ Gretchen Mary Greisler, to address plaintiff's applications.  ALJ Greisler thereafter issued an unfavorable decision on May 13, 2019.  That opinion became a final

---

[2]    Plaintiff was insured for benefits under Title II until December 31, 2017.

determination of the agency on July 14, 2020, when the Social Security

Appeals Council ("Appeals Council") denied plaintiff's request for review of

the ALJ's decision.

B.    The ALJ's Decision

In her decision, ALJ Greisler applied the familiar, five-step sequential

test for determining disability.  At step one, she found that plaintiff had not

engaged in substantial gainful activity during the relevant period.

Proceeding to step two, ALJ Greisler found that plaintiff suffers from severe

impairments that impose more than minimal limitations on her ability to

perform basic work functions, including a spine disorder, a foot/ankle

impairment, bilateral carpal tunnel syndrome, and asthma.  As part of her

consideration at step two, the ALJ found that plaintiff's learning disorder is

not a severe impairment.

At step three, ALJ Greisler examined the governing regulations of the

Commissioner setting forth presumptively disabling conditions (the

"Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that

plaintiff's conditions do not meet or medically equal any of those listed

conditions, specifically considering Listings 1.02 (major joint dysfunction)

and 1.04 (disorders of the spine).

ALJ Greisler next surveyed the available record evidence and

concluded that plaintiff retains the residual functional capacity ("RFC") to

perform a range of sedentary work, with the following limitations:

> she is unable to climb ladders/ropes/scaffolds, and she can only occasionally perform all other postural activities. The claimant cannot work at unprotected heights or in close proximity to dangerous machinery. She can occasionally reach over shoulder height, and she can frequently reach in all other directions. The claimant can frequently handle, finger, and feel. She cannot operate foot controls. She cannot tolerate concentrated exposure to respiratory irritants. Finally, she must be allowed to flex, extend and rotate her neck for one-to-two seconds as intermittently necessary.

At step four, ALJ Greisler concluded that plaintiff is unable to perform

her past relevant work.  To address step five, the ALJ elicited the testimony

of a vocational expert regarding how plaintiff's limitations impact the

occupations that she can perform, and concluded, based on the vocational

expert's testimony, that plaintiff remains able to perform available work in

the national economy, citing as representative positions document

preparer, toy stuffer, and table worker.  Based upon these findings, ALJ

Greisler concluded that plaintiff was not disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on September 17, 2020.[3]  In support

---

[3]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18.

of her challenge to the ALJ's determination, plaintiff argues that the ALJ

failed to properly analyze the opinion from treating physician Dr. Patrick

Caulfield, in that she (1) did not appropriately discuss whether that opinion

was supported by Dr. Caulfield's own treatment notes, (2) improperly relied

on her own interpretation of objective imaging evidence while failing to

consider other evidence that showed greater limitations, (3) erred in finding

that that opinion should not be relied upon because it was based on

plaintiff's subjective complaints of pain, asserting that her pain is

substantiated by the fact that she has undergone multiple surgeries, and

(4) the ALJ failed to consider other evidence in the record that is consistent

with Dr. Caulfield's opinion and did not explain how the evidence is

inconsistent with that opinion.  Dkt. No. 19.

Oral argument was conducted in this matter, by telephone, on March

17, 2022, at which time decision was reserved.

III.    DISCUSSION

A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is subject to a "very deferential" standard of review, and is

---

Under that General Order, the court treats the action procedurally as if cross-motions for
judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules
of Civil Procedure.

limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must

8

be "more than a mere scintilla" of evidence scattered throughout the

administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation

marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal

whether an ALJ's findings are supported by substantial evidence, a

reviewing court considers the whole record, examining evidence from both

sides, because an analysis on the substantiality of the evidence must also

include that which detracts from its weight."  *Williams*, 859 F.2d at 258

(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951);

*Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

     B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or

9

whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of

his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).

If it is determined that it does, then as a final matter, the agency must

examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g),

416.920(g).

The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it

becomes incumbent on the agency to prove that the claimant is capable of

performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether

that burden has been met, the ALJ should consider the claimant's RFC,

age, education, past work experience, and transferability of skills.  *Ferraris*,

728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

Because plaintiff's application for benefits was filed in July of 2017,

the amended regulations regarding the weighing of medical source opinion

evidence apply to her claim.  Under those regulations, the Commissioner

"will not defer or give any specific evidentiary weight, including controlling

weight, to any medical opinion(s), . . . including those from your medical

sources," but rather will consider whether those opinions are persuasive by

primarily considering whether the opinions are supported by and consistent

11

with the record in the case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule").  An ALJ must articulate in his or her determination as to how persuasive he or she finds all of the medical opinions and explain how he or she considered the supportability[4] and consistency[5] of those opinions. 20 C.F.R. § 416.920c(b).  The ALJ also may – but is not required to – explain how he or she considered the other relevant enumerated factors related to the source's relationship with the claimant, including the length of any treatment relationship, the frequency of examinations by the source and the purpose and extent of the treatment relationship, whether the source had an examining relationship with the claimant, whether the source specializes in an area of care, and any other factors that are relevant to the persuasiveness of that source's opinion.  20 C.F.R. § 416.920c(c).

---

[4]      On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[5]      On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Plaintiff argues that the ALJ erred by failing to provide appropriate reasons, supported by substantial evidence, to justify finding that the opinion from treating physician Dr. Patrick Caulfield is unpersuasive. Specifically, plaintiff argues that the ALJ did not discuss whether the opinion was supported by Dr. Caulfield's own treatment notes; she improperly over-relied on the fact that Dr. Caulfield's opinion was based on plaintiff's subjective reports given that the record –which includes evidence of multiple surgeries resulting in little improvement – supports plaintiff's subjective reports; she relied too heavily on electromyography ("EMG") testing evidence from 2018, while ignoring other evidence of limitations particularly related to plaintiff's hands and arms; and she did not appropriately explain the basis for her heavy reliance on magnetic resonance imaging ("MRI") studies of the lumbar spine despite the fact that the other medical evidence showed greater limitations.  Dkt. No. 19.

In a form completed on July 2, 2018, Dr. Caulfield noted that plaintiff's diagnoses include "pain in neck & back, numbness in arms," and listed corresponding symptoms as "pain in back, lumbar, thoracic & cervical, numbness in both arms."  Administrative Transcript ("AT") at 613.[6]

---

[6]    The Administrative Transcript is found at Dkt. No. 14, and will be cited as "AT __."

Dr. Caulfield opined that plaintiff can sit for only thirty minutes at one time and for less than two hours total in an eight-hour workday, can stand for thirty minutes at one time and stand or walk for less than two hours in an eight-hour workday; she can walk only one block without severe pain; she requires a job that permits shifting positions at will between sitting, standing, and walking; and she must walk every thirty minutes for ten minute periods throughout the workday.  AT 614.  Dr. Caulfield further opined that plaintiff requires unscheduled breaks approximately every thirty minutes of between five and ten minutes each due to pain or numbness, needs to elevate her legs to pelvic level approximately every thirty minutes due to pain, and requires use of a handheld assistive device because of imbalance, pain, and weakness.  AT 614-15.  He also opined that plaintiff can lift and carry twenty pounds occasionally and ten pounds or less frequently; occasionally twist, stoop, crouch, squat, and climb stairs; rarely climb ladders; use her hands fifty percent of the workday, but never use her fingers during the workday; and use her arms fifty percent of the workday for reaching in front of her body but never for reaching overhead.  AT 615.  Finally, Dr. Caulfield opined that plaintiff would be off-task twenty-five percent or more during the workday, is capable of only low-stress work, and would likely be absent from work more than four days per month due to

her impairments and treatment.  AT 616.

When weighing Dr. Caulfield's medical source statement, the ALJ found that it was not persuasive for multiple reasons, concluding that (1) Dr. Caulfield's citation to "pain" as the basis for the opined limitation is insufficient to support his findings because pain is merely a symptom; (2) Dr. Caulfield's opinion is inconsistent with the evidence of record, including a negative EMG nerve conduction study, MRI studies of right ankle and the lumbar spine that showed no more than mild issues, and the opinion from consultative examiner Dr. Elke Lorensen; and (3) "it is clear from treatment notes that Dr. Caulfield simply documented the claimant's subjective complaints," and the ALJ had found that plaintiff's subjective complaints were not entirely consistent with the medical and other evidence.  AT 17.

As to the ALJ's rationale that Dr. Caulfield's opinion was not persuasive because it was heavily based on plaintiff's subjective reports, I note that Dr. Caulfield's treatment report from the same day on which he completed his opinion states that, when completing that form, he "depended in large measure in her responses to the questions in the paperwork," and noted that his examination itself showed only mild weakness in both hands and a decreased ability to lift her arms above her

shoulders.[7]   AT 639.   The ALJ is therefore correct that Dr. Caulfield's

opinion was based almost entirely on plaintiff's subjective reports rather

than his own medical assessment of plaintiff's functionality.

Plaintiff has not directly challenged the reasons provided by the ALJ

for finding her subjective reports as a whole not to be entirely consistent

with the evidence, arguing only that her subjective reports of residual neck

and hand pain and numbness are "the understandable byproduct" of her

history of neck and wrist surgeries "that failed to significantly alleviate these

symptoms," citing to a handful of treatment notes showing some

abnormalities to counter the ALJ's reliance on a normal EMG study.   Dkt.

No. 19, at 15-16.   Plaintiff's arguments regarding the ALJ's reliance on

such studies will be discussed in further detail below related to the ALJ's

findings regarding supportability and consistency, but I find none of

plaintiff's arguments regarding the ALJ's choice to reject either the extent of

the subjective reports related to pain or to reject Dr. Caulfield's opinion as

being based on those subjective reports to be persuasive.   As will be

discussed below, although plaintiff continued to experience some

symptoms following her various surgeries, the record contradicts her

---

[7]     The form completed by Dr. Caulfield followed his third examination of plaintiff, who had only recently become his patient in March of 2018.

current assertion that those surgeries failed to provide meaningful or

significant reduction in those symptoms in that she reported improvement –

even if not complete relief – of her symptoms as a result of those

procedures.  *See, e.g.,* AT 357, 364, 485-86, 522, 527, 530, 538, 610, 663.

I also note that the ALJ did not find that plaintiff suffered no pain, but

instead acknowledged that she retains fairly significant limitations by

rendering a restrictive RFC finding for a range of sedentary work.  *See*

*Bush v. Colvin*, 14-CV-0601, 2015 WL 4078204, at *9 (N.D.N.Y. July 6,

2015) (Suddaby, J) (finding no error where "[t]he ALJ did not look to the

medical evidence as proof positive Plaintiff was completely without

symptoms or completely pain free, instead the ALJ reasoned the relief

Plaintiff received from injections, medication, surgery, and a spinal cord

stimulator allowed him to perform sedentary work").  Plaintiff has offered no

persuasive reason for doubting the ALJ's finding that her subjective reports,

to the extent she asserted greater limitations due to pain or other

symptoms, are not wholly consistent with the evidence.

I note additionally that, in her decision, the ALJ cited to plaintiff's

reported activities, which include personal care, cooking, cleaning, doing

laundry, managing money, driving, and providing childcare as being

inconsistent with her overall allegations of debilitating pain and difficulty

walking or using her hands or arms.  AT 16.  Indeed, in her report from the consultative examination, Dr. Elke Lorensen noted that plaintiff reported she cooks twelve times per week, cleans seven times per week, does laundry three times per week, shops once per month, does childcare daily, showers and dresses daily, and watches television and reads.  AT 484. The frequency of these activities, most of which require the use of hands, is reasonably inconsistent with plaintiff's other reports, including of hand numbness in particular.  Where an ALJ has not committed error in discounting a claimant's subjective complaints, he or she also does not err by rejecting the opinion of a physician to the extent that it relies on those same subjective complaints.  *See Kelly Ann G. v. Comm'r of Soc. Sec.*, 20-CV-1013, 2022 WL 160266, at *8 (N.D.N.Y. Jan. 18, 2022) (Hummel, M.J.) (finding no error in the ALJ's rejecting of the physician's opinion for extreme limitations where those limitations were based entirely on the claimant's own reports and they were not consistent with the objective evidence); *Georgiana W. v. Comm'r of Soc. Sec.*, 20-CV-6051, 2021 WL 2809553, at *10 (W.D.N.Y. July 6, 2021) ("Accordingly, because the ALJ did not err in discounting plaintiff's subjective complaints, it was within his discretion to discount Dr. Gibbons's opinion to the extent it relied on those complaints.").

       In this instance, the ALJ did not merely rely on the fact that Dr.

Caulfield's opinion was explicitly based on plaintiff's subjective reports, however, when finding his opinion to be unpersuasive.  Instead, she also considered whether that opinion was supported by Dr. Caulfield's own treatment or explanations and consistent with the evidence as a whole. Although I agree with plaintiff that the ALJ's decision could have been more thorough in providing explicit explanations or citations to relevant evidence, I find that her decision is nonetheless sufficient to allow for meaningful review of whether she applied the proper legal standards and her findings are supported by substantial evidence.

As to the ALJ's consideration of the factor of supportability, the decision shows that the ALJ considered this factor.  First, as plaintiff herself recognizes, the ALJ considered whether the opinion was supported by the written explanation that Dr. Caulfield provided within the form itself, and found that it was not because the only explanation Dr. Caulfield provided for the significant opined limitations was the reported existence of pain symptoms.  AT 17.  Because the ALJ did explicitly consider whether the explanations in the opinion form itself provided support for the opined limitations, this is not a case in which the ALJ has completely failed to provide any indication that she considered the supportability factor or failed to provide any explicit analysis about that factor.  *Contrast Nicole L. v.*

*Kijakazi*, 20-CV-1576, 2022 WL 160274, at *8-9 (N.D.N.Y. Jan. 18, 2022) (Mordue, J.) (noting that supportability includes an assessment of whether both relevant objective evidence and supporting explanations provided by the source support his or her opinion, and finding error where the ALJ "did not provide any explicit analysis of its supportability" as to one opinion).

I note, moreover, that although the ALJ did not explicitly discuss whether the Dr. Caulfield's opinion was supported by his own observations as recorded in treatment notes, he did explicitly point to the fact that it was Dr. Caulfield's treatment history that revealed that his opinion was based on plaintiff's subjective complaints, and it is therefore clear that the ALJ did in fact review and consider those treatment notes.  Additionally, the consideration of Dr. Caulfield's statement regarding the basis for his opinion – which, in this case, consisted of plaintiff's subjective reports and answers – also constitutes a part of the assessment informing whether his opinion is supported by the relevant evidence.  Indeed, it is clear from the statement highlighted by the ALJ that Dr. Caulfield did not, by his own admission, rely on the examination findings contained in his treatment records.  Plaintiff has not persuasively explained why the ALJ would have been required to discuss the findings in the treatment notes in detail when discussing supportability given that Dr. Caulfield specifically stated he did

not rely on his own findings when rendering his opinion.

Third, even if the ALJ should have specifically discussed the objective findings in Dr. Caulfield's treatment notes, plaintiff has not pointed to any evidence that would suggest that the ALJ ignored evidence in her favor.  In her brief, plaintiff cites to abnormal observations in a single treatment note from Dr. Caulfield, which happens to be the same treatment note in which Dr. Caulfield stated that he based his opinion on plaintiff's answers to the questions regarding limitations – a treatment note that, as discussed above, must have been considered because the ALJ explicitly cited to other findings from that document.  Dkt. No. 19, at 14-15; AT 637-39.  In the treatment note cited by plaintiff, Dr. Caulfield himself states that his examination revealed "some mild [4/5] weakness in both hands and decreased ability to elevate the arms above the shoulders."  AT 639.  I note also that, other than the above treatment note, all of Dr. Caulfield's treatment records from examinations show full range of motion in the upper and lower extremities, full motor strength, and no abnormalities.  *See, e.g.*, AT 604, 607, 633.  Because observations of mild hand weakness and an observation of difficulty elevating her arms above her shoulders on a single visit do not reasonably support Dr. Caulfield's opinion that plaintiff could never use her fingers or reach overhead in particular, or could only use her

hands for fifty percent of the workday, I find that the ALJ's failure to explicitly discuss the mild findings on that single visit does not constitute any failure to meaningfully assess whether Dr. Caulfield's opinion was supported by his own treatment notes. *Cf. Nicole L.*, 2022 WL 160274, at *9 (finding the ALJ's discussion of supportability was insufficient because he discussed the supportability of only specific opined limitations but not others and failed to discuss treatment records that contained objective findings of greater limitation that would support the physician's opinion).

As to the ALJ's consideration of the factor of consistency, the ALJ found that Dr. Caulfield's opinion was overall not consistent with the objective evidence of record, citing specifically to a normal post-surgical nerve conduction study, MRI testing that showed at most mild changes in plaintiff's ankle and lumbar spine, and the contrary opinions of the state agency medical consultant and the consultative examiner.  AT 17.

Although plaintiff argues that the ALJ "played doctor" by relying on the findings in the MRI, that is simply not the case here, where the ALJ explicitly relied on opinion evidence from medical sources as well as her own assessment of all of the evidence when formulating the RFC.  *See Edward M. C. v. Comm'r of Soc. Sec.*, 20-CV-0644, 2021 WL 3032692, at *5 (N.D.N.Y. July 19, 2021) (Suddaby, C.J.) (finding that the ALJ did not

rely on his own lay opinion or interpret raw medical data inappropriately because he did not base his findings solely on the MRI and other testing, but also on other objective evidence, including an opinion from a physician); *Barbara B. v. Comm'r of Soc. Sec.*, 18-CV-0878, 2019 WL 5540874, at *4 (N.D.N.Y. Oct. 28, 2019) (Baxter, M.J.) ("There is a difference between analyzing medical records to determine what the weight of the evidence supports and interpreting raw medical data that would require the expertise of a physician or other trained medical source; the ALJ is precluded from doing only the latter.").  The fact that these imaging studies were essentially normal was only one part of the ALJ's analysis. The ALJ also found that the opinion was not consistent with the objective evidence, which generally showed only mild or sporadic observations of abnormalities, and that finding is supported by substantial evidence. Indeed, although the record does show some evidence of limitations, there does not appear to be anything in the treatment notes that reasonably warrants greater limitations than those already accounted for by the ALJ in the restrictive RFC finding.

As to her wrists, in January of 2017, plaintiff reported that, although she still had some numbness and tingling in her palm and fingers, it was better than before her surgeries, and no abnormalities were observed.  AT

357, 359.  Plaintiff's next treatment for hand or wrist issues was in October of 2017, when she reported experiencing pain and numbness in her upper extremities after unloading fencing from a truck, and at which time was noted that she had normal strength in her arms and hands, but subjectively decreased sensation to light touch.  AT 609-10.  In November 2017, she was observed to have decreased range of motion in her cervical spine, neck tenderness, and a positive Tinel's sign in her left wrist, but normal grip and sensation.  AT 536.  Throughout 2018 and 2019, plaintiff was typically observed to have no abnormalities related to her arms, hands, or neck other than the mild loss of sensation and difficulty elevating her arms above her shoulders already discussed from July of 2018, and limited neck range of motion and 4/5 grip strength in March of 2019.  *See, e.g.*, AT 639, 725.  These sporadic notations to mild loss of grip strength, decreased neck range of motion, and subjective numbness or loss of sensation are not reasonably consistent with the restrictions in Dr. Caulfield's opinion related to reaching, handling, and fingering in particular.

As to her lumbar spine, in January 2017 plaintiff was observed to have tenderness in her bilateral sacroiliac joints, on the right greater than the left.  AT 359.  In March of 2018, she reported worsening back pain, but no abnormal observations were noted, and subsequent examinations

continued to show no objective abnormalities related to her lower back.  AT 602-04, 605-07, 625, 633.  A year later, in March of 2019, plaintiff was observed to have limited range of motion in her back with no obvious deformity, and intact strength but reduced sensation to light touch in her lower extremities and feet.  AT 725.  However, MRI studies throughout the period showed only small disc bulges at the L4-L5 and L5-S1 levels with mild bilateral foraminal narrowing at L4-L5.  AT 715, 727.  These scant observations are not reasonably consistent with the limitations opined by Dr. Caulfield.

Considering plaintiff's claims regarding her ankles, throughout the portion of the record concerning the relevant time, plaintiff reported various pain and tenderness with her bilateral ankles; her issues with her left ankle resolved by March 2018, although she continued to experience pain in her right foot and ankle after surgery to remove a cyst that treating physician Dr. Vanvalkenberg reflected "should not impact her lifestyle moving forward" and which was managed with a heel lift.  AT 447, 496, 584, 595, 636, 663, 691.  Indeed, plaintiff was not observed to have any gait or ambulation abnormalities and, in January of 2019, it was observed that she had good motion and strength in her ankles with no instability.  AT 691. The evidence related to this impairment therefore is not consistent with the

extreme restrictions in walking, standing, or other exertional activities that Dr. Caulfield opined.

In the end, plaintiff's arguments amount to little more than a request to reweigh the evidence and to draw different inferences than did the ALJ from that evidence. Although, again, I agree with plaintiff that the ALJ's discussion of the evidence in particular could have been more fulsome, it is well-established that an ALJ need not discuss or cite every piece of evidence to show that it was considered, and plaintiff has provided nothing to suggest that the ALJ failed to consider any of the relevant evidence when assessing plaintiff's claim, given that the ALJ's RFC finding accounts for a broad range of limitations and limits plaintiff to a fairly restricted range of sedentary work. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered."); *Sierra M. B. v. Saul*, 20-CV-0127, 2020 WL 7316121, at *8 (N.D.N.Y. Dec. 11, 2020) (Suddaby, C.J.) (collecting cases). After conducting an independent review of the record, I see no indication that the evidence plaintiff points to that the ALJ failed to discuss is not accounted for by the limitations in the RFC finding.

Additionally, plaintiff's arguments ignore the fact that the ALJ did not merely rely on her own assessment of the medical evidence but rather also

the opinion from consultative examiner Dr. Lorensen, which she found to be persuasive.  AT 15.  In her examination report, Dr. Lorensen noted that, although plaintiff had some ambulation difficulties, she had recently undergone ankle surgery and was not yet completely weightbearing as part of recovery; Dr. Lorensen opined that the crutches plaintiff used at the examination were not medically necessary.  AT 484-84.  Dr. Lorensen further observed decreased range of motion in the cervical and lumbar spine and slightly decreased sensation in the right leg, but normal strength in her extremities, including grip strength, and that plaintiff was able to use her hands to fasten snaps, buttons, and tie something together.  AT 485-86.  Dr. Lorensen's opinion, based on her examination, was that plaintiff had mild limitations in standing and ambulating due to her recent ankle surgery, moderate limitations in bending, lifting, and reaching, mild limitations in turning her head, no limitations for sitting, and a need to avoid smoke, dust, and other respiratory irritants.  AT 486.  It is clear that the ALJ relied quite heavily on Dr. Lorensen's opinion when crafting the RFC, although she found that the evidence merited some additional or greater limitations.  AT 15.  Because the ALJ properly explained her rationale for relying on this opinion, and because plaintiff has offered no arguments challenging the ALJ's reliance on this opinion, it constitutes another explicit,

valid basis for the ALJ's finding that Dr. Caulfield's contrary opinion was inconsistent with the evidence.

Based on the foregoing, I find that the ALJ's findings related to Dr. Caulfield's opinion are based on applicable legal standards and supported by substantial evidence, and plaintiff's arguments to the contrary must be rejected.

IV.  SUMMARY AND ORDER

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I find that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, it is hereby

ORDERED that defendant's motion for judgment on the pleadings (Dkt. No. 22) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 19) be DENIED, the Commissioner's decision be AFFIRMED, and plaintiff's complaint be DISMISSED; and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:     March 21, 2022
           Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge